**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| RYAN EARLS | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 11-398 |
| | * | |
| MEDTEC AMBULANCE CORPORATION | * | SECTION "B"(5) |

## ORDER AND REASONS

Before the Court are cross motions for summary judgment. First, is Plaintiff Ryan Earls' Motion for Summary Judgment and his responsive pleadings. (Rec. Doc. Nos. 79, 112, and 114). In response, Defendants Medtech Ambulance Corporation and Oshkosh Corporation filed opposition thereto. (Rec. Doc. No. 97). Further, Defendants filed their Medtech Ambulance Corporation's and Oshkosh Corporation's Motion for Summary Judgment. (Rec. Doc. No. 87). Accordingly, Plaintiff filed opposition thereto. (Rec. Doc. No. 107). Also, Oshkosh Corporation filed its own Motion for Summary Judgment. (Rec. Doc. No. 85). Initially, Plaintiff did not oppose dismissing Oshkosh Corporation from the instant action, (Rec. Doc. No. 96), but he later changed his position and filed opposition thereto. (Rec. Doc. No. 138).

Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Plaintiff Ryan Earls' Motion for Summary Judgment (Rec. Doc. No. 79) is **DENIED**.

1

**IT IS FURTHER ORDERED** that Medtech Ambulance Corporation's and Oshkosh Corporation's Motion for Summary Judgment (Rec. Doc. No. 87) is **DENIED**.

**IT IS FURTHER ORDERED** that Oshkosh Corporation's Motion for Summary Judgment (Rec. Doc. No. 85) is **GRANTED**.

Cause of Action and Facts of Case:

The facts of this case arise from an alleged product liability injury. (Rec. Doc. No. 79-1, at 1). In December of 2010, Plaintiff worked as an emergency medical technician, employed by the City of New Orleans. (Id.). Plaintiff and his partner, Matthew Alewine, responded to an emergency call in a New Orleans EMS ambulance, Unit 3215. (Id.). Plaintiff loaded the gun-shot victim into the ambulance while his partner drove. (Id. at 2). As Plaintiff was administering patient care to the victim, Unit 3215 traveled over a bump in the road. (Id.). Subsequently, allegedly, the ambulance's bench seat, where Plaintiff was seated, collapsed, causing Plaintiff to fall and sustain injuries to his lower back.[1] (Id.).

---

[1] Plaintiff weighed 215 lbs at the time of the accident. (Rec. Doc. No. 79-7, Exh. F, at 3).

**LAW and ANALYSIS**

**a. Motion for Summary Judgment**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

### b. *Oshkosh Corporation*

Plaintiff initially did not oppose dismissing Oshkosh from this action. (Rec. Doc. No. 96) ("Plaintiff . . . would respectfully respond to the Motion for Summary Judgment sought by Oshkosh Corporation in that Plaintiff at this time will not oppose a Motion to Dismiss Oshkosh without prejudice."). (Id. at 1). However, after deposing Mr. Robert Wilkey, whose testimony has been excluded in part and admitted in part by the Court, (Rec. Doc. No. 171), Plaintiff sought to change his position. (Rec. Doc. No. 138). Plaintiff contends that he learned that "Medtec effectively is Oshkosh at the deposition of Medtec's 'chief engineer' (Mr. Wilkey)." (Id. at 1). However, Plaintiff promised to attach the February 3, 2012 transcribed deposition to the record, and it took him well over one month to do so. (Id.; *see also* Rec. Doc. No. 182). Furthermore, Plaintiff fails to demonstrate where in the transcript there is testimony from Wilkey supporting Plaintiff's contention that Medtec and Oshkosh are connected.[2] Plaintiff's memorandum merely states "[t]he testimony of Mr. Wilkey will show that a genuine issue of fact exists concerning the control of Medtec by Oshkosh." (Rec.

---

[2] While Plaintiff does specify certain statements made by Wilkey with regard to his knowledge of seat belt safety requirements and him not testing the squad bench seat at issue, (Rec. Doc. No. 176), Plaintiff fails to delineate any statements made by Wilkey regarding the alleged connection between Medtec and Oshkosh.

4

Doc. No. 138). Plaintiff's deposition transcript is over 155 pages in length, and there is no delineation either in his memoranda or in the transcript that specifies where Wilkey's statements support his contentions.[3] Therefore, all Plaintiff has proffered regarding Oshkosh's involvement in this action is "conclusory rebuttals" which are "insufficient to avoid summary judgment." *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Thusly, unless Plaintiff can directly point to relevant statements made by Wilkey, or some other evidence connecting Oshkosh to the instant matter, summary judgment in favor of Oshkosh is proper at this time.[4]

*c. Medtec*

It is well-settled that "a manufacturer of a product is liable to a claimant for damage 'proximately caused' by a characteristic of the product that rendered it 'unreasonably dangerous' when the damage arose from a reasonably anticipated

---

[3] Note: Even after Plaintiff was directed to limit the transcript to the relevant portions of Wilkey's testimony, he still failed to do so. (Rec. Doc. Nos. 181 and 182).

[4] Furthermore, the Court notes that even if Plaintiff produces said evidence, if this proves that Medtec is a parent company of Oshkosh, summary judgment is still proper, as "Louisiana law does not permit a court to hold the parent company liable for its subsidiary's actions without proof that the parent company knew of and approved those actions." *Andry v. Murphy Oil, U.S.A., Inc.*, 935 So.2d 239, 249-50 (La. App. 4th Cir. 2006).

use of the product by the claimant . . ." *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).

Here, Medtec, by its own admission, manufactured Unit 3215 and the bench seat at issue. (Rec. Doc. No. 79-1, Exh. A). Plaintiff sat on the bench seat in Unit 3215, and the collapse and failure of same allegedly caused Plaintiff's injuries. Further, neither party has contested that sitting on a seat is not a reasonably anticipated use of the bench seat. Thusly, the primary issue centers around whether the bench seat was unreasonably dangerous either by it having a defective design or because there was a failure to warn.

First, a product is unreasonably dangerous if, at the time the product left the manufacturer's control, "a safer alternative design existed for the product that would have prevented [a plaintiff's] alleged harm, and the burden on the manufacturer of adopting the alternative design does not outweigh the likelihood that the product will cause harm and the gravity of that harm."[5] *See Grenier v. Medical Engineering Corp.*, 99 F.Supp.2d 759, 764 (W.D. La. 2000).

---

[5] According to LA. REV. STAT. § 9.2800.56, a product is unreasonably dangerous in design if, at the time the product left the manufacturer's control, an alternative design existed for the product that was capable of preventing the alleged damage, and the alternative design would prevail in a traditional risk/utility analysis.

Here, Plaintiff contends that there were available alternative designs that were used by other ambulance manufacturers that would have prevented the harm at issue, and he also relies upon the testimony of his expert, Andrew McPhate. As McPhate testified to the fact that "[t]here was no other structural support at the rear of the seat, nor was there any structural support at the sides." (Rec. Doc. No. 79-1, Exh. F, p. 2). He further testified that "[t]his is an unusual configuration." (Id.). Yet, in rebuttal, Medtec relies upon the testimony of its expert, Robert Wilkey, as well. While the Court did exclude his testimony relating to his opinions about "causation since he did not conduct or participate in testing the bench seat at issue." (Rec. Doc. No. 171). The Court did admit Wilkey's "fact and opinion testimony about governmental standards and historical information about the bench seat." (Id.). Thusly, there is a factual dispute regarding integral information about the bench seat. Furthermore, it is recognized that:

> In both defective design and failure to warn cases courts have applied a risk-utility analysis to determine liability. A court must first determine what risk, if any, the product created. *A court must then determine whether a reasonable person would conclude that the danger-in-fact, whether*

---

*Grenier v. Medical Engineering Corp.*, 99 F.Supp.2d 759, 764 (W.D. La. 2000).

> *foreseeable or not, outweighs the utility of the product . . .* In applying the risk-utility analysis, we have said that a *plaintiff must show evidence concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design.*

*Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (internal quotation marks omitted, citations omitted, and emphasis added).

Plaintiff has submitted only a portion of what he would need to produce to satisfy the risk-utility analysis. He has presented some evidence concerning the economic costs of the accident at hand, but failed to satisfy the other prongs. According to Plaintiff's expert Andrew McPhate, if Medtec had adopted an alternative design and completed certain repairs, the repairs would have cost $423.86. (Rec. Doc. No. 107, at 6)("[C]oncrete proof in this matter shows that the economic impact to Medtec in adopting at least one alternative design was very minimal, especially when weighed against the risk of extensive damages suffered by someone like Mr. Earls.").

In rebuttal, Medtec claims that it "has put evidence into the record showing that Medtec does not have knowledge of any other accidents like Plaintiff's" and that "[w]ithout evidence showing the severity of the risk created by the bench seat or the frequency of other failures," Plaintiff cannot sustain his

burden. (Rec. Doc. No. 97, at 7-8). As such, there are still some remaining factual questions to be resolved concerning Plaintiff's defective design claim. Thusly, summary judgment is not appropriate on this issue at this time.

Second, to prove a failure to warn case, a plaintiff must present competent evidence that the manufacturer: (1) knew of the risk; (2) failed to warn of the risk; and (3) the failure to warn was both the cause-in-fact and proximate cause of a plaintiff's injury. *See Hall v. Sinn, Inc.*, 102 Fed. Appx. 846, 849 (5th Cir. 2004).[6]

As an initial matter, the Court recognizes that Plaintiff has failed to proffer any evidence that Medtec knew of the risk at issue or failed to warn of same. Furthermore, per LA. REV. STAT. §9.2800.57,[7] Medtec has failed to proffer any evidence that the allegedly dangerous characteristic of the bench seat would have been contemplated by an ordinary user, or that Plaintiff

---

[6] "To prevail on a failure to warn case under the LPLA [Louisiana Products Liability Act], a plaintiff must prove that the manufacturer failed to warn[] the treating physician of the dangers associated with the drug *and* that this failure was both a cause in fact and a proximate cause of plaintiff's injury." *Hall v. Sinn, Inc.*, 102 Fed. Appx. 846, 849 (5th Cir. 2004)(citing *Willet v. Baxter*, 929 F.2d 1094 (5th Cir. 1991)).

[7] "[A] manufacturer is not required to provide a warning about its product when (1) the product is not dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, or (2) where the user knows or reasonably should be expected to know of the dangerous characteristic of the product." LA. REV. STAT. §9.2800.57.

knew or should have known of the allegedly dangerous characteristic of the bench seat. As such, there are several genuine issues of material fact, which have not been resolved. Accordingly, summary judgment is not appropriate at this juncture.

Furthermore, while non-use of a seat belt cannot be proffered to prove a plaintiff was negligent,[8] Medtec's expert, Les Becker, Ph.D., testified that Plaintiff should have been wearing his seat belt at the time of the accident, as "a paramedic should be unrestrained in the rear patient compartment only when truly life-saving measures are required." (Rec. Doc. No. 97-3, at 2, ¶4(b)). Further, Becker testified that "[f]or the vast majority of patients, 'care' can be provided from behind a seatbelt. Even critical care providers can provide most of their care while restrained." (Id.). In contrast, Plaintiff contends that he was not wearing a seat belt because of EMS patient care protocol. Therefore, there is a factual dispute as to whether Plaintiff should have been wearing his seat belt at the time of the accident.[9] Chris Martinez, one of

---

[8] "Thus, we find that La. R.S. 32:295.1(E) prohibits Hyundai from introducing evidence that [Plaintiff] was not wearing her seat belt to prove that this failure caused her injuries." *Rougeau v. Hyundai Motor America*, 805 So.2d 147, 156 (La. 2002).

[9] The Court recognizes that the issue of seat belt non-use is not dispositive of whether Plaintiff bears some comparative fault

Plaintiff's co-workers, also testified that the ambulance traveled over the bump so hard that it caused the Plaintiff to "fly off the bench seat," causing him to hit his head on the ceiling of the rear compartment "and then . . . come back down on the bench seat."[10] Given all of this, there is a factual dispute as to whether the seat broke because Plaintiff fell on it or whether he fell because the bench seat was defective. Accordingly, this issue is not ripe for summary judgment and should be resolved by the requisite fact-finder.

Accordingly, and for the reasons articulated above, **IT IS ORDERED** that Plaintiff Ryan Earls' Motion for Summary Judgment (Rec. Doc. No. 79) is **DENIED**.

**IT IS FURTHER ORDERED** that Medtech Ambulance Corporation's and Oshkosh Corporation's Motion for Summary Judgment (Rec. Doc. No. 87) is **DENIED**.

---

for his injuries. Yet, it can be illustrative to determine whether this non-use allowed his body to be unrestrained, such that upon the ambulance traveling over the bump in the road, causing Plaintiff to hit his head, this created enough force for his landing on the bench seat to cause it to collapse, and not a defective design of same.

[10] "The driver supposedly hit some kind of bump on the road, I don't know what it was, and *causing him to fly off the bench seat*. I think he hit his head on the ceiling, I think is what he said, and *then he came back down on the bench seat and the bench seat collapsed from the back part down*." (Rec. Doc. No. 97-4, at 3)(emphasis added).

**IT IS FURTHER ORDERED** that Oshkosh Corporation's Motion for Summary Judgment (Rec. Doc. No. 85) is **GRANTED**.

New Orleans, Louisiana, this 20th day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE